# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-779V
UNPUBLISHED

| | |
|---|---|
| BRIANNA MEYERS,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: January 12, 2024<br><br>Special Processing Unit (SPU);<br>Ruling on the Record; Influenza<br>(Flu); Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Leigh Finfer*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Debra A. Filteau Begley*, U.S. Department of Justice, Washington, DC, for respondent.

### DAMAGES RULING[1]

On June 26, 2020, Brianna Meyers filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 12, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"), and entitlement was found in the Petitioner's favor on September 9, 2021. The parties reached on impasse on the appropriate award for pain

---

[1] Because this unpublished ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

and suffering from Ms. Meyers' injury, however, and were therefore ordered in July 2022 to brief damages.

For the reasons described below I find that Petitioner is entitled to **$125,000.00** in damages, representing compensation for actual pain and suffering. I defer resolution of other damages components at this time.

I.   **Petitioner's Medical Records**

A complete recitation of the facts can be found in the Petition, the parties' respective briefs, and in Respondent's Rule 4(c) Report.

Petitioner received the flu vaccine on October 12, 2018, in her left shoulder. Ex. 1 at 1. She first reported severe left shoulder pain with range of motion October 16, 2018, to Dr. Jeffery Robinson. Ex. 2 at 73. X-rays were taken, but unremarkable. *Id.* at 105. She was diagnosed with suspected rotator cuff impingement. *Id.* at 77. On October 29, 2018, Petitioner again complained of significant pain as a result of the flu vaccine, rating it as seven out of ten. *Id.* at 72. She was diagnosed with post-immunization arthritis and prescribed prednisone. *Id.*

Petitioner returned to Dr. Robinson on November 16, 2018. Petitioner now reported pain from the left elbow to her neck, especially with range of motion. *Id.* at 69. Petitioner reported that the prednisone significantly improved her pain, but it returned "not quite as severe" as soon as she stopped taking it. *Id.* Dr. Robinson noted "[p]resume [Petitioner] is having a peripheral neuropathy causing her pain. Unclear if this is secondary to the actual injection or immune reaction to the injection…." *Id.* An MRI performed on November 12, 2018, showed no rotator cuff or labral pathology, but increased fluid in the bursa. Ex. 2 at 65.

On November 26, 2018, Petitioner presented to Dr. Richard Stanley, an orthopedist. Ex. 2 at 62. An examination showed mild limitations with terminal range of motion in her left shoulder. *Id.* at 65. Dr. Stanley noted that Petitioner's symptoms were consistent with early adhesive capsulitis. *Id.* at 62. Petitioner also received a corticosteroid injection. *Id.* at 65.

Petitioner saw Physician Assistant ("PA") John Navarro on December 28, 2018, for an orthopedic follow-up. Ex. 2 at 59. Petitioner reported persistent throbbing pain in her shoulder, and very little improvement after the steroid injection. An examination showed mild limitations with terminal range of motion secondary to Petitioner's discomfort. *Id.* at 61. A second steroid injection was administered. *Id.* at 61-62.

On February 18, 2019, Petitioner saw Dr. Stanley and reported a "dramatic improvement" after her second injection. Ex. 2 at 58. She reported minimal residual night pain symptoms and significantly improved range of motion. *Id.*

Petitioner returned to PA Navarro on March 18, 2019. Ex. 2 at 52, 54. She reported mild to moderate recurrence of left shoulder pain and received a third steroid injection. *Id.* at 55. Petitioner reported minimal relief on April 29, 2019, and received a fourth steroid injection. *Id.* at 47.

On June 10, 2019, Petitioner returned to Dr. Stanley, reporting minimal improvement. Ex. 2 at 40. She also reported pain with activates over her head. *Id.* at 43. Tramadol was prescribed for pain relief.

A second MRI was performed on June 25, 2019. Ex. 2 at 103. It showed a low-grade interstitial partial thickness tear of the supraspinatus tendon, mild tendinosis, and trace fluid in the bursa. *Id.* at 102-03.

Petitioner discussed the MRI findings with Dr. Stanley on June 27, 2019. Ex. 2 at 34. At that time, she reported progressive left shoulder pain, rated as seven out of ten. *Id.* at 36. An examination showed decreased range of motion, mildly positive Hawkins test, tenderness to palpation along the bicipital groove and along the anterior left glenohumeral joint. *Id.*

On July 12, 2019, Petitioner underwent left shoulder arthroscopic labral repair, subacromial decompression, and a partial acromioplasty. Ex. 2 at 31. Thereafter, she attended twenty one physical therapy sessions (between September 17, 2019 and February 27, 2020). Ex. 3 at 5-48. Her condition improved, and by October 17, 2019, she reported that her shoulder was "doing pretty good" and her night pain was "pretty much gone." *Id.* at 22. By the end of October, Petitioner's pain was reported as three out of ten, ad she felt that she had improved overall. *Id.* at 26; Ex. 2 at 11, 13. She noted general improvement with soreness and movement, but also described "residual left shoulder discomfort after a day of work as a dental hygienist." *Id.*

Petitioner's last physical therapy session occurred on February 27, 2020. Ex. 3 at 47. Petitioner still was experiencing "considerable scap[ular] weakness". *Id.* She reported no pain at that time, but three out of ten at worst. *Id.* Petitioner returned to Dr. Stanley on December 4, 2020, for left shoulder arthroscopy with revisional labral repair. Ex. 9 at 10. Records related to this procedure, including those prior to and after surgery, were not submitted.

## II.  Affidavit Evidence

Petitioner submitted a statement in support of her claim. Ex. A. In it she describes her injury and course or treatment, and how her injury impacted her life. She rated her pain as between three and eight out of ten. *Id.* at 2. Further, Petitioner described how her injury impacted her career, and that the need for additional surgery will significantly impact her earning ability. *Id.* at 3.

## III.  Damages

The parties filed memoranda in support of their respective damages positions on October 24, 2022. Petitioner is seeking $205,000.00 for pain and suffering, plus $2,767.46 for unreimbursed expenses, and $23,748.88.00 in lost earnings. Petitioner's Brief in Support of Damages ("Br."), ECF No. 46. Respondent reacted, arguing that $107,500.00 is an appropriate amount for pain and suffering. Respondent also argues that Petitioner's records only support $1,982.78 for unreimbursed expenses, but does not support any awards for lost earnings. Respondent's Damages Brief ("Opp."), ECF No. 45.

## IV.  Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and

4

suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[3]

### V.     Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including all medical records, declarations, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Ms. Meyers asserts that the severity of her injury is comparable to cases awarding $200,000.00 for pain and suffering. *Schoonover v. Sec'y of Health & Human Servs.*, No.16-1324V, 2020 WL 5351341 (Fed. Cl. Aug. 5, 2020) (awarding $200,000 in pain and suffering); *Meirndorf v. Sec'y of Health and Hum. Servs.*, No. 19-1876V, 2022 WL 1055475 (Fed. Cl. Spec. Mstr. March 7, 2022) (awarding $200,000 for pain and suffering). In particular, she emphasizes that she suffered a moderate SIRVA with significant pain, and treated through twenty physical therapy sessions, four steroid injections, and two surgeries. Br. at 5-6. She also stated that her shoulder injury has drastically impacted her career as a dental hygienist. Ex. A at 2-3. She therefore deems $190,000.00 a fair sum for actual pain and suffering.

Respondent, by contrast, submits that an award of $107,500.00 is appropriate. Opp. at 8-13. Respondent notes that Petitioner's course of treatment was predominantly moderate. Further, Respondent argues that Petitioner's second arthroscopic procedure may not be treatment oriented to the vaccine injury. *Id*. at 11-12. Respondent cites to two cases wherein Petitinoer was awarded less than $100,000.00 for a SIRVA. *Shelton v. Sec'y of Health and Hum. Servs.*, No. 19-279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021) (awarding $97,500.00 for pain and suffering); *Hunt v. Sec'y of Health and Hum. Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. Jun. 16, 2022).

Based on the medical records, I conclude that Ms. Meyers suffered a moderate SIRVA for approximately sixteen months. She sought treatment soon after her vaccination, and initially her pain was mostly reported as moderate to severe (seven-to-

---

[3] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

eight out of ten) for the first several months with periods of relief from steroid injections and medications. Petitioner's initial, conservative treatment was unsuccessful, and she ultimately underwent surgery in July of 2019.

Petitioner made good progress in her recovery, and by October her pain was reportedly mild (three out of ten), and primarily gone by February 27, 2020. Ex. 3 at 26, 47. Her course of treatment consisted of two MRIs, four steroid injections, arthroscopic surgery, and twenty-one physical therapy sessions. Petitioner also asserts that a second surgery was needed to correct a revisional labral repair that was a sequalae of her injury. Br. at 3. However, as Respondent notes, Petitioner did not file medical records supporting the contention that the revisional labral repair was related to her SIRVA. As such, I do not include the second surgery in my calculation of damages.

The overall severity of the injury at issue herein is thus not high enough to justify the $205,000.00 requested by Petitioner. I note that the SIRVA cases cited by Petitioner, *Schoonover* and *Meirndorf,* involved injuries that continued for a longer period of time and more involved treatment. In *Schoonover* petitioner had two surgeries, 71 physical therapy sessions over four years. 2020 WL 5351341, at *5. In *Meirndorf*, petitioner had two surgeries, 79 physical therapy sessions, and additional treatments over three years. *Meirndorf*, 2022 WL 1055475, at *2. However, Petitioner's course of treatment warrants more than the $107,500.00 requested by Respondent.

I find this case most analogous to *Nute v. Sec'y of Health & Hum. Servs.*, No. 18-0140V, 2019 WL 6125008, at *12 (Fed. Cl. Sept. 6, 2019) (awarding $125,000.00 for pain and suffering). The *Nute* petitioner underwent arthroscopic surgery, nineteen physical therapy sessions, three cortisone injections, experienced nine months of significant pain, and treated for eleven months. While *Nute* involved a marginally more conservative and shorter course of treatment, Ms. Meyers had periods of relief following certain treatments.

Taking all of the above into account, I find that $125,000.00 for pain and suffering is fair compensation.

### VI.     Expenses and Alleged Loss of Earnings

Petitioner requests $2,767.46 for out of pocket expenses, and $23,748.88 in lost earnings. However, she also only requests a ruling on pain and suffering in her motion. Br. at 1, n.1. Respondent does not object to $1,982.78 in expenses, but opposes any award for lost earnings because Petitioner has not supplied sufficient substantiating documentation. Opp. at 11. I decline to rule on these damages components at this time, but will allow the parties a brief period to discuss whether an agreement can be reached.

## Conclusion

For all the reasons discussed above, and based on consideration of the records as a whole, I award Petitioner $125,000 for past pain and suffering.

The parties shall file a Joint Status Report by <u>February 13, 2024</u>, indicating whether settlement with regard to lost wages and out-of-pocket expenses would be productive.

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
